UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
ISAAC ALMANZAR, *pro se*,              :
                                        :
                Petitioner,         :
                                        :  **MEMORANDUM AND ORDER**
                -against-          :  10-CV-1307 (DLI)
                                        :
UNITED STATES OF AMERICA,              :
                                        :
                Respondent.        :
------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

     Isaac Almanzar ("Petitioner") was convicted, upon his plea of guilty, of conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base ("crack cocaine"). On February 1, 2008, this Court sentenced him to 300 months of incarceration, followed by 5 years of supervised release. (Minute Entry, No. 05-cr-623,[1] Docket Entry No. 164.) Petitioner timely appealed. On March 25, 2009, the Second Circuit Court of Appeals affirmed the judgment of this Court. *See United States v. Soto, et al.*, 2009 WL 765015 (2d Cir. Mar. 25, 2009) (summary order).

     On March 18, 2010, Petitioner, proceeding *pro se*,[2] filed a "motion to vacate, set aside or correct sentence," invoking both 28 U.S.C. § 2255 ("Section 2255") and Federal Rule of Civil Procedure 60(b) ("Rule 60(b)"). (*See generally* Pet., Docket Entry No. 1; Mem. of Law in Supp.

---

[1] All references to "No. 05-cr-623" are to the criminal case docket underlying the instant petition.

[2] In reviewing the petition, the court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the court interprets the petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

of Mot. ("Mem."), Docket Entry No. 3.) Petitioner contends that the court erroneously applied the career offender enhancement under the United States Sentencing Guidelines ("Guidelines") (Mem. at 2-3, 9), and that he received ineffective assistance of counsel during his plea allocution and sentencing. (Mem. at 18-23; Supp. Mem. at 2, Docket Entry No. 19.) Petitioner seeks to be resentenced without being classified as a career criminal. (Mem. at 23-24.)

Upon the government's request (s*ee* 6/21/10 Let., Docket Entry No. 7), the Court solicited Petitioner's consent to characterize his motion as a habeas corpus petition under Section 2255, rather than a hybrid Rule 60(b) and Section 2255 motion, and allowed him to withdraw or amend his petition to include any other claims he believed he had in order to avoid successive Section 2255 petitions. (*See* 3/16/13 Ord., Docket Entry No. 13.) The Court also cautioned Petitioner that, if he failed to respond, the Court would construe his motion as a habeas petition. (*Id*.)[3] Petitioner failed to timely respond to the Court's request for consent to construe his motion as a habeas corpus petition. Therefore, on April 26, 2013, the Court held that his motion would be considered under Rule 2255. (*See* 4/26/13 Minute Entry.)[4]

For the reasons stated below, Petitioner's Section 2255 petition is denied in its entirety.

---

[3] *See Adams v. United States*, 155 F. 3d 582, 584 (2d Cir. 1998) (per curiam) ("[D]istrict courts should not recharacterize a motion purportedly made under some other rule as a motion made under § 2255 unless (a) the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized, or (b) the court finds that, notwithstanding its designation, the motion should be considered as made under § 2255 because of the nature of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it so recharacterized."); *accord Castro v. United States*, 540 U.S. 375, 377 (2003) (adopting same rule).

[4] On May 3, 2013, after the court had already converted his hybrid motion into a Section 2255 petition, Petitioner indicated that he consented to the conversion of his motion to a habeas corpus petition. (*See* Consent, Docket Entry 17.)

# BACKGROUND

## I. Plea Agreement and Plea Hearing

On December 8, 2006, Petitioner pled guilty, pursuant to a plea agreement, to a single count indictment charging him and other members of the Latin Kings gang with conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine. (*See generally* Plea Tr., No. 05-cr-623, Docket Entry No. 176.) The plea agreement stated, *inter alia*, that the charge to which Petitioner was pleading guilty carried a mandatory minimum sentence of ten years' imprisonment and a maximum sentence of life imprisonment, and that Petitioner's likely base offense level would be 32 under the Guidelines. (*See* Plea Agreement ¶¶ 1-2, No. 08-cr-654,[5] Supp. App'x filed under seal.) The plea agreement also indicated that Petitioner would be subject to a Guidelines sentence range of 188 to 235 months' imprisonment, based upon an adjusted offense level of 34, resulting from a four-point increase for an aggravating role and a two-point reduction for a acceptance of responsibility, and assuming Petitioner fell within Criminal History Category III. (*Id.* ¶ 2.) Finally, the agreement noted the following:

> The Guidelines estimate set forth in paragraph 2 is not binding on the Office, the Probation Department or the Court. If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is different from the estimate, the defendant will not be entitled to withdraw the plea. If the Guidelines calculation of the Court is different from the Guidelines estimate set forth in paragraph 2, the defendant will not be entitled to withdraw the guilty plea.

(*Id.* ¶ 3.)

During the plea hearing, Petitioner, who had been placed under oath (Plea Tr. at 3), confirmed that he had read and reviewed the plea agreement and understood all of its terms. (Plea Tr. at 22-23.) Petitioner further stated he understood that he faced a mandatory minimum sentence of ten years' imprisonment and a maximum sentence of life imprisonment. (*Id.* at 26-

---

[5] All references to "No. 08-cr-654" are to the Second Circuit docket in Petitioner's direct appeal.

27.) The Court discussed the Guidelines and stated, "The bottom line is that until the date of sentencing . . . you cannot know and I'm not going to know with any certainty what the [G]uidelines will be or whether there will be grounds to depart from them." (*Id*. at 28.) When asked whether he understood that the government's Guidelines estimate could be wrong and that the estimate was not binding on the government, Probation, or the Court, Petitioner indicated that he understood. (*Id.* at 29-30.) Petitioner also stated that he understood that he could not withdraw his plea of guilty if the estimate was wrong. (*Id.* at 30.)

When questioned by the Court about his attorney, Samuel Gregory, Petitioner confirmed that he had had an opportunity to discuss the case and the indictment with Mr. Gregory. (*Id.* at 11.) When asked if he was fully satisfied with the representation and advice given to him by Mr. Gregory, Petitioner responded affirmatively. (*Id.*) Petitioner also indicated that no one had threatened or forced him to plead guilty, and that no one had made any promise as to what his final sentence would be. (*Id.* at 20-31.) In light of Petitioner's responses, the Court found that Petitioner was acting voluntarily, that he understood his rights and the consequences of his plea, and that there was a factual basis for the plea. (*Id*. at 33-34.) Accordingly, the Court accepted Petitioner's plea of guilty to the one count stated in the indictment. (*Id.* at 34.)

## II.     Presentence Investigation Report, Sentencing, and Direct Appeal

In contrast to the plea agreement, the Probation Department ("Probation"), in preparing the May 16, 2007 Presentence Investigation Report ("PSR"), came to a different result in calculating the applicable Guidelines range, beginning with a base offense level of 38. (PSR ¶ 63.) Probation calculated a total offense level of 39, which incorporated a four-point enhancement for aggravating role and a three-point reduction for acceptance of responsibility. (*Id.* ¶¶ 61, 66.) Additionally, Probation determined that, because Petitioner had two prior felony

convictions for crimes of violence, he qualified as a "career offender" under the Guidelines, resulting in a criminal history category of VI. (*Id.* ¶¶ 69, 73, 74, 79.) Probation specifically relied on Petitioner's convictions for (1) robbery in the 1st degree in 1992 and (2) attempted robbery in the 2nd degree in 1993 in the section of the PSR detailing Petitioner's criminal history. (PSR ¶¶ 73-74.) The Guidelines sentence range reflected in the PSR was 360 months to life imprisonment. (*Id.* ¶ 114.)[6]

By letters dated June 7, 2007, June 13, 2007, and December 17, 2007, counsel for Petitioner, Mr. Gregory, set forth extensive objections to the PSR, including objections to the findings concerning Petitioner's criminal history category. (*See* November 7, 2007 Addendum to Presentence Investigation Report, No. 05-cr-623; 12/17/07 Let., No. 05-cr-623, Docket Entry No. 156.) Mr. Gregory argued, *inter alia*, that Probation "substantially over-represent[ed] the seriousness of the defendant's criminal history." (12/17/07 Let. at 4.) At the February 1, 2008 sentencing hearing, Mr. Gregory again argued that the PSR recommended an overly harsh sentence, and pleaded with the Court to follow the sentencing range set out in the plea agreement. (*See generally* Sentencing Tr., No. 05-cr-623, Docket Entry No. 177.) Specifically, Mr. Gregory argued at length that Petitioner should not be categorized as a career offender. (*Id.* at 23-27.)

At the sentencing hearing, the Court concluded that: (1) a two-level reduction for the global plea disposition applied; (2) a three-point reduction for acceptance of responsibility applied; (3) a four-point enhancement for Petitioner's aggravating role applied; and (4)

---

[6] On January 4, 2008, Probation amended the PSR to reflect that the 2007 amendments to the Guidelines served to reduce Petitioner's base offense level from 38 to 36, making his total offense level 37. (*See* Second Addendum, No. 05-cr-623, Docket Entry No. 242-2.) However, Probation found that the reduced offense level did not affect the Petitioner's advisory Guidelines range of imprisonment. (*Id.*)

5

Petitioner was a career offender based on his prior convictions for robbery in the 1st degree and attempted robbery in the 2nd degree, resulting in a Criminal History Category of VI. (*See* Sentencing Tr. at 28-31.) The resulting Guidelines range of 292 to 365 months' imprisonment was thus based on a total offense level of 35 and a Criminal History Category VI. (*Id.* at 31.) The Court ultimately sentenced Petitioner to 300 months' imprisonment and five years' supervised release. (*Id.* at 48.) On March 25, 2009, the Second Circuit affirmed the sentence and judgment of conviction. *See United States v. Soto*, 2009 WL 765015.

## DISCUSSION

### I. Ineffective Assistance of Counsel

The court must evaluate Petitioner's claim of ineffective assistance of counsel under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 687-88. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Second, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, the second part of the *Strickland* test is satisfied upon a showing by the defendant "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, Petitioner claims that he received ineffective assistance of counsel because his attorney, Mr. Gregory: (1) deceived Petitioner "about the terms and conditions of the plea agreement" – specifically the fact that he could be sentenced as a career offender – and then

6

threatened to withdraw as counsel if Petitioner did not enter a guilty plea (Mem. at 19-20; Supp. Mem. at 2); and (2) failed to challenge Petitioner's designation as a career criminal. (Supp. Mem. at 2, 12.)[7]

A.  *Alleged Erroneous Advice and Coercion*

Petitioner's claim that Mr. Gregory misled him with respect to the possibility that Petitioner could be sentenced as a career criminal and threatened to withdraw as counsel if Petitioner did not plead guilty are unavailing.

At the outset, Petitioner's claim that Mr. Gregory misled or coerced him contradict Petitioner's prior sworn statements at the plea allocution, in which Petitioner confirmed that he was fully satisfied with the representation and advice of Mr. Gregory, that no one had threatened or forced him into pleading guilty, and that no one "had made any promise . . . as to what [his] final sentence will be." (Plea Tr. at 20-31.) *See United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (recognizing that plea allocution testimony "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made"). Petitioner's claim is further undermined by the sworn statements of Mr. Gregory, who claims that he did, in fact, inform Petitioner that he could be sentenced more harshly than the Guidelines estimate set out in the plea agreement. (*See* Gregory Aff.) Mr. Gregory also claims to have no recollection of threatening to withdraw from the case

---

[7] Petitioner's briefs, when read liberally, could also be construed to include a claim that Mr. Gregory provided ineffective assistance of counsel by failing to petition for a writ of certiorari after Petitioner's direct appeal. (Supp. Mem. at 3-4). However, "since a defendant has 'no constitutional right to counsel [to pursue an appeal to the Supreme Court], he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application [for such an appeal] timely." *Prousalis v. United States*, 2007 WL 2438422, at *14 (S.D.N.Y. Aug. 24, 2007) (quoting *Wainwright v. Torna*, 455 U.S. 586, 587-588 (1982)).

7

if Mr. Almanzar did not plead guilty. (*Id.*) Moreover, nothing in the record suggests that Petitioner lacked the requisite mental capacity to enter a knowing and voluntary plea. (*See* Plea Tr. at 5-10.)

In any event, the Court need not decide whether Mr. Gregory made inaccurate predictions concerning Petitioner's sentence because, where, as here, Petitioner's "specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, . . . the issue is whether [Petitioner] was *aware of actual sentencing possibilities*, and if not, whether accurate information would have made any difference in his decision to enter a plea." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (emphasis added and citation omitted). Accordingly, even assuming, *arguendo*, that Mr. Gregory had given Petitioner erroneous advice, Petitioner did not suffer prejudice because he was aware at the plea hearing, *inter alia*, that: (1) the charge to which Petitioner was pleading guilty carried a mandatory minimum sentence of ten years' imprisonment and a maximum sentence of life imprisonment; (2) the plea agreement's sentencing estimate could be wrong and was not binding on the Court; and (3) findings by Probation could influence the Guideline range. *See, e.g.*, *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (concluding that "clear and thorough plea allocution" adequately apprised petitioner of actual sentencing possibilities); *Rosenfeld v. United States*, 972 F. Supp. 137, 146 (E.D.N.Y. 1997) ("Any inaccurate prediction that may have been made by [petitioner's] counsel was cured by the Court's detailed questioning of the petitioner at the plea allocution, which alerted the petitioner of the 'actual sentencing possibilities.'" (quoting *Ventura*, 957 F.2d at 1058)).

In sum, under these circumstances, Petitioner has not shown that, but for Mr. Gregory's purported misrepresentations, Petitioner would not have pled guilty and would have insisted on

going to trial.

      B.    *Failure to Challenge Career Criminal Designation*

Petitioner's ineffective assistance claim based on Mr. Gregory's failure to object to his career criminal designation is also unavailing. Specifically, Petitioner claims that Mr. Gregory should have argued that: (1) Petitioner's conviction for attempted robbery in the 2nd degree was not a "crime of violence" for the purpose of finding that Petitioner is a career offender; (2) "prior state court convictions are not predicating offenses for the career offender or armed career criminal enhancements by operation of 28 U.S.C. § 994(h);" (3) the Court possessed inherent authority to depart from Probation's determination of the Guidelines sentencing range, pursuant to *Kimbrough v. United States*, 552 U.S. 85 (2007); and (4) the sentencing enhancement would impose "an unjust, unnecessary and unduly harsh sentence." (Mem. at 9; Supp. Mem. at 2, 12-16.)

      1.    *Whether Petitioner's prior conviction is a "crime of violence"*

Under the Guidelines, an adult defendant convicted of a felony that is a controlled substance offense, such as Petitioner, is a career offender "if the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). *United States v. Reyes*, 691 F.3d 453, 457 (2d Cir. 2012). The Guidelines define a "crime of violence" as an offense punishable by imprisonment exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *United States v. Reyes*, 691 F.3d at 457 (citing U.S.S.G. § 4B1.2(a)(1)).

In the underlying criminal action, the Court based its finding that Petitioner was a career offender on his prior convictions for robbery in the 1st degree and attempted robbery in the 2nd degree. (*See* Sentencing Tr. at 28-31). Petitioner contends that the Court erred in categorizing

9

his conviction for attempted robbery in the 2nd degree, under New York State Penal Law §§ 110.00 and 160.10, as a crime of violence, because the offense is defined broadly enough under New York law to criminalize non-violent conduct. (Mem. at 9.) Moreover, Petitioner claims that he was not charged with using a weapon in connection with the robbery, nor did he admit to using or threatening the use of physical force. (*Id*. at 16).

Section 160.10 of the Penal Law provides that a person "is guilty of robbery in the second degree when he *forcibly* steals property . . .," regardless of the specific subsection applicable.[8] *United States v. Bogle*, 2013 WL 2278101, at *3 (2d Cir. May 23, 2013) (summary order) (emphasis added). Thus, although Petitioner claims that the Court should have inquired further into the conduct underlying Petitioner's prior conviction (Mem. at 12-13), Petitioner's conduct is irrelevant to the question of whether he was convicted of a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). *See United States v. Williams*, 2013 WL 2395987, at *6 (2d Cir. June 4, 2013) (summary order) (finding that 2nd degree attempted robbery, in violation of NYPL § 160.10, "qualif[ies], categorically, as [a] violent felon[y] under the Armed Career Criminal Act."); *United States v. Smith*, 553 F. Supp. 2d 263, 266 (W.D.N.Y. 2008) (finding that "there is no question that Robbery in the Second Degree in violation New York State Penal Law § 160.10(2), meets the U.S.S.G. § 4B1.2(a) definition of crime of violence."), *aff'd*, 376 F.

---

[8] The full text of Section 160.10 of the Penal Law reads as follows: A person is guilty of robbery in the second degree when he forcibly steals property and when: (1) He is aided by another person actually present; or (2) In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (a) Causes physical injury to any person who is not a participant in the crime; or (b) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or (3) The property consists of a motor vehicle, as defined in section one hundred twenty-five of the vehicle and traffic law.

App'x 140 (2d Cir. 2010), *order vacated in part*, 2011 WL 924349 (2d Cir. Mar. 18, 2011).[9]

Petitioner's reliance on *United States v. Fernandez*, 390 F. Supp. 2d 277 (S.D.N.Y. 2005) is misplaced. In *Fernandez*, a district court judge found that a youthful offender adjudication does not qualify as a "violent felony" under the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924, because the youthful offender adjudication "sets aside" the underlying conviction. 390 F. Supp. 2d at 280. Petitioner was not a youthful offender when he was charged with attempted robbery in the 2nd degree. Even if Petitioner had been a youthful offender, the Second Circuit has held that the Guidelines do not contain the same "set aside" exemption for youthful offender adjudications as the ACCA. *United States v. Parnell*, 524 F.3d 166, 169-70 (2d Cir. 2008). "Instead, the Guidelines are clear that an offense committed at age eighteen or older is a prior felony conviction." *Id* at 170.

In sum, Petitioner's prior conviction for attempted robbery in the second degree is clearly a violent felony under the Guidelines, regardless of the conduct underlying the conviction. As such, Mr. Gregory's "failure to make a meritless argument does not rise to the level of ineffective assistance." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995).

2. *Remaining career criminal designation claims*

Petitioner's remaining ineffective assistance of counsel arguments fail. Petitioner's contention that prior state court convictions are not predicate offenses for the career offender enhancement is incorrect. *See* U.S.S.G. § 4B1.2, comments n.1 (clarifying that "prior felony convictions" include both federal and state convictions). Thus, any alleged failure by Mr.

---

[9] Although *United States v. Bogle*, 2013 WL 2278101, and *United States v. Williams*, 2013 WL 2395987, address the question of whether Section 160.10 is a violent felony under the Armed Career Criminal Act, courts rely interpretations of the ACCA's definition of a "violent felony," *see* 18 U.S.C. § 924(e)(2)(B), when interpreting the Guidelines' "substantially similar" definition of "crime of violence," *see* U.S.S.G. § 4B1.2(a). *United States v. Parnell*, 524 F.3d 166, 169-70 (2d Cir. 2008) (citing *United States v. Brown*, 514 F.3d 256, 268-69 (2d Cir. 2008)).

Gregory to make this argument does not constitute ineffective assistance. *See United States v. Kirsh*, 54 F.3d at 1071. Moreover, the record contradicts Petitioner's claim that Mr. Gregory failed to argue that the Court had discretion to depart from the Guidelines sentencing range, as he zealously made that argument at sentencing. (12/17/07 Let. at 1, 2; Sentencing Tr. at 24-27.) Notably, upon direct appeal, the Second Circuit found that "the district court was aware of its discretion to deviate from the crack cocaine ranges in light of the objectives of sentencing but declined to exercise that discretion." *United States v. Soto*, 2009 WL 765015, at *2. The record also contradicts Petitioner's claim that Mr. Gregory neglected to argue that the career criminal designation would impose an unduly harsh sentence. In fact, Mr. Gregory argued vigorously both in his sentencing letters and during the sentencing hearing that Petitioner's criminal history was overstated and that a ten-year sentence would be "sufficient but not unduly harsh." (Sentencing Tr. at 23; *see generally* 12/17/07 Let.)

Accordingly, Petitioner's claim of ineffective assistance based on Mr. Gregory's purported failure to oppose his career offender designation is without merit.

## II. Plea and Sentencing[10]

Petitioner also contends that: (1) his plea was "involuntary and unknowing," because he was "unaware of the direct consequences of pleading guilty" (Supp. Mot. at 2, Docket Entry No. 10; Supp. Mem. at 2); (2) his plea agreement was "breached" (Supp. Mot. at 4); and (3) the Court erred by finding that Petitioner was a career criminal based on his 1993 New York State conviction for attempted robbery in the 2nd degree. (Mem. at 1; Supp. Mem. at 2.) None of these claims have merit.

---

[10] It is unclear whether Petitioner's remaining arguments were intended to bolster his ineffective assistance of counsel claims or to serve as independent grounds for habeas corpus relief. In liberally construing Petitioner's *pro se* pleadings, the court interprets the petition to raise the following additional arguments. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d at 474.

As discussed at greater length above (*see* discussion, *supra*, I.A), Petitioner was aware of actual sentencing possibilities and the fact that neither Probation nor the Court was bound by the plea agreement. Thus, Petitioner's argument that he was not provided with notice that he would be classified as a career criminal until he received the PSR (Supp. Mot. at 3) is unavailing. Similarly, Petitioner's claim that the Court erroneously considered his 1993 conviction for attempted robbery as a predicate offense in designating him as a career offender (Supp. Mot. at 5) fails for the reasons already discussed. (*See* discussion, *supra*, I.B.1.)

Petitioner insists that his plea agreement was breached, because the Court did not "develop a factual basis for . . . a career offender enhancement." (Supp. Mot. at 4). To the extent that Petitioner argues that the *Court* breached the plea agreement, his argument again fails both for the reasons discussed above (*see* discussion, *supra*, I.B.1), and because he was informed during the allocution that the Court is not bound by the agreement. To the extent that Petitioner instead argues that the *government* breached the plea agreement, the Second Circuit has already addressed and rejected this argument upon direct appeal. *See United States v. Soto*, 2009 WL 765015, at *1 (finding that "the government was freed from its obligations under the plea agreement because new information relevant to sentencing, Almanzar's 1992 robbery, became known to the government after the execution of that agreement."); *see also United States v. Habbas,* 527 F.3d 266 (2d Cir. 2008) (holding that the terms of a plea agreement which base the government's obligations under the plea agreement on "information known to the government," serve "the important purpose of clarifying the government's freedom to advocate for a higher guideline range when its change of position is based on its *subsequent* acquisition of aggravating

information."). Accordingly, Petitioner's argument that the plea agreement was breached is without merit.[11]

In sum, Petitioner has failed to show any basis for section 2255 relief with respect to his plea or sentence and the petition is denied.

## CONCLUSION

For the reasons set forth above, Petitioner's request for relief pursuant to Section 2255 is denied in its entirety. Petitioner is further denied a certificate of appealability as he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* Fed. R. App. P. 22(b); *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      September 30, 2013

/s/<br>
DORA L. IRIZARRY<br>
United States District Judge

---

[11] Moreover, merits aside, Petitioner's claim also is procedurally improper given that "[i]t is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" *United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) (quoting *United States v. Sanin*, 252 F.3d 79, 83) (2d Cir. 2001)).